Napton, judge,
delivered the opinion of the court.
This was an ejectment to recover a small portion of a larger tract, supposed to be confirmed to the heirs of Antoine Dubruiel. The title which the plaintiff produced on the trial was as follows :
1. The proceedings of the hoard of commissioners in 1811, by which it appeared that, on Dec. 17, 1799, Antoine Dubruiel presented a petition to the lieutenant governor Delassus, stating that being desirous of establishing salt works on the river Aux Boeuf, (Buffale Creek) about thirty leagues from St. Louis, he desired a grant of one hundred arpens square on said river, located in such a way as to the petitioner might seem most advantageous for his purposes. On the 19th, (two days after the date of the petition) the lieutenant governor granted the petitioner the land he solicited, and as there were no settlements, he was relieved from the usual duty of having it immediately surveyed, but it was enjoined upon him to have it surveyed without delay so soon as a settlement was made by any one. The surveyor general, Soulard, was directed to take notice of this title. In addition to these, there was before the hoard, as the minutes show, a plat of survey of 10,000 arpens, dated 24th February, 1806, signed Fremon Delauviere, deputy surveyor. The claim was rejected in 1832, the last board of commissioners took up this claim and examined witnesses relative to it. Pisón testified that in December, 1803, he accompanied Rankin, a deputy surveyor to survey this and other tracts ; that they were prevented from surveying this tract, being driven off by a party of Indians. This witness saw kettles, furnaces, &c., on the land, and understood that the land was afterwards surveyed by Delauvier. Delauncey swore that to the best of his recollection, Dubreuil went on the land before the change of government, in 1802, as he thinks, for the purpose of making salt, hut was driven off by the Indians. Fremon Delauviere swore, that in 1802, he furnished Dubreuil with ten salt kettles, oxen, carts, &c., and that Debreuil and his hands built a house on his concession at Buffalo Creek, *152 erected furnaces and made' salt, and lived there until February, 1803, when they were driven off by the Indians, who killed the oxen, burnt the house and broke the kettles. Several months after this, witness went down in a pirogue to get what the Indians left, and found seven kettles. Witness further stated that in February, 1806, upon the application of Dubreuil, he proceeded to this land and Surveyed it, and this survey is the same now on the books of the surveyor general. This witness was a deputy surveyor in 1805 and 1806.
The board recommended this claim for confirmation,' and by the act of July 4, 1836, this claim was confirmed.
2. The proceedings of the circuit court of Pike county, in making partition of this tract among the heirs of Antoine Dubreuil, showing that the piece in controversy was assigned to Chauvette DübíetiiL
3. A deed from Chauvette Dubreuil to the plaintiff.
4. A plat of survey, to which was appended the following certificate : u Surveyor’s office, St. Louis, 8th March, 1844. The above diagram of survey No. 3178, in Ts. 53 and 54 N. Its. 1 and 2 W. of 5th pr. m. of 10,000 arpens confirmed to Antoine Dubreuil or his legal representatives, and showing its position in relation to the lines of the adjoining public and private surveys, is conformable to the field notes of the said survey on file in this office, which have been examined and approved, as returned by Joel Campbell, deputy surveyor, under instructions from the surveyor general of this district, dated the 17th of November, 1837. Silas Reed, surveyor of public lands in the States of Illinois and Missouri.”
5. The defendant was proved to be within the lines of this survey.
This was the plaintiff’s title. Upon the cross-examination of the plaintiff s witnesses, who proved the defendant to be in possession, the defendant attached Campbell’s survey. The witness was present at this survey, and no corner was seen, nor any traces of a previous survey. The defendant then asked of the court these instructions :
“ That there is no evidence of any legal title in the plaintiff. That unless the plaintiff has shown a survey under the Spanish government of the grant of Antoine Dubreuil, embracing the defendant’s possession, he cannot recover. That there is no evidence before the court showing what land was confirmed to Antoine Dubreuil under his grant of 10,000 arpens, by act of July 4, 1836.”
These instructions were refused and exception taken.
The defendant then proceeded with his evidence, explanatory of the nature of Delauriere’s survey in 1806, and Campbell’s survey in 1837. *153 Spencer testified that he and his father and Fremon Delauriere and another Frenchman went down from Fremon’s lick, {now in Ralls county) in the spring of 1805 or 1806', to the Mississippi river, that they descended the river in a perogue to where the town of Louisiana now stands, that they went ashore on a spot, nearly opposite the place where the store of Phineas Block now stands, that Fremon I). had a compass, marked a tree and set his compass ; that he asked his witness’ father, if the course he set his compass would include the lick, to which old Spencer said yes ; that they re-embarked and went down the river, and this was all the survey of which witness had any knowledge.
Basys, a chain carrier for Campbell, in 1837, stated that they commenced eighty-three rods above the mouth of Noix creek, on the Mississippi river; that he could find no corner at the spot of beginning, and Campbell made a stone corner ; that the witness went around the lines and found no traces whatever of any previous survey, except the surveys of sectional lines by the U. S. surveyors.
Cunningham, a chain carrier for Campbell, testified to the same thing.
The defendant then introduced a certificate of pre-emption, given to the defendant in 1843, and signed C. C. Cady, register. This certificate stated that Archer had deposited in the office, proofs of settlement and right of pre-emption, under the act of congress of 4th September, 1841, and that he was therefore entitled to possession of the land therein described.
The plaintiff then, by consent, introduced other documents explanatory of his title.
1. A description list marked L., and a certificate from N. P. Taylor, •dated land office at St. Louis, Reg. office, 21st March, 1842, certifying that the following quotation was a correct copy from a list of claims regularly entered in U. S. recorder’s office, at St. Louis, as certified to the register of the land office at this place, by Frederick Bates, Esq., recorder over date of 10th July, 1818. The extract is this : “ Claims to land in the old counties of St. Charles and St. Louis, including Howard, as to which congress has made no decision. Antoine Dubreuil, Recpt. p. 442, 10,000 arpens Aux Boeuf.” In connexion with this, the plaintiff also produced in evidence copies of letters from the secretary of the tresury, (Crawford) in 1818, to the commissioner of the general land offie (Meigs) and from the commissioner to the register, directing the register to reserve from sale all lands embraced in a descriptive list to be furnished him by the recorder of land titles. Seye* *154 ral other documents were read, taken from the correspondence of the land department, and designed to show the number of entries and New Madrid locations which had been made upon this Dubreuil claim, and the opinions of the officers of the federal government in relation to them. As these papers are no wise material to the case, we shall omit any further account of them.
The defendant then asked several instructions, of which the court gave the following:
1. The concession to Antoine Dubreuil of 10,000 arpens, produced in ‘evidence, gave said Dubreuil no right to any specific land whatever, and unless it shall appear from the evidence in the cause that a survey of said grant was made by the proper officer under the Spanish government, embracing the land in controversy, the verdict must be for the defendant.
2. Unless it appears from the evidence that a claim of Antoine Dubreuil was one of those claims reported on favorably by the recorder and commissioners, who acted under the acts of July 9, 1832, and an act supplemental thereto approved March 2, 1833, and entered in the transcript of decisions by the said recorder and commissioners to the commissioner of the general land office, the verdict must be for the defendant.
3. Unless it appears from the evidence that the persons named in the record of partition produced in evidence as the heirs of Antoine Dubreuil, are the heirs at law of the said Dubreuil, and all said heirs, the verdict must be for the defendant.
4. Conceding that the said claim of Dubreuil was embraced by the confirming clause of the act of July 4, 1836, unless the court shall find that some specific land was confirmed thereby to the said Dubreuil, the said confirmation was void for uncertainty, and no act of any exeutive officer of the government could render it valid afterwards.
5. If no survey designating the land granted to Antoine Dubreuil under the grant of 10,000 arpens produced in evidence, was ever made prior to the 4th July, 1836, there was no authority in any surveyor of the United States to survey said grant afterwards for the first time, and if such survey was ever made it was a nullity.
The court refused to give the following, which was also asked by the defendant:
There is no evidence before the court of any legal title in the plaintiff to the land in dispute.
The plaintiff had a verdict which the defendant moved to set aside j *155 but the court gave judgment npon the verdict, and the case is brought here by appeal.
It is probable that the bill of exceptions in this case does not give a correct statement of the disposition made of the instructions. The case was submitted to the court without a jury, and the verdict for the plaintiff can scarcely be reconciled with some of the instructions which the court is reported to have given, I have, however, copied the details of the plaintiff’s title, and the defendant’s evidence impugning it, from which we may infer the questions really involved in the case.
These questions are principally these : 1. Was a survey under the Spanish government essential to the validity of the confirmation or grant in 1836 P 2. If not, was it essential, in order to the introduction of the survey of 1837, in evidence, that a definite location of the Spanish grant should have been made previous to the action of the board of commissioners, and the act of congress confirming their report.
The first question must be answered in the negative. It was immaterial to the validity of the confirmation in 1836, whether there had been a Spanish survey or not. This was a circumstance for the consideration of the commissioners, who were appointed to investigate the claim, and for the congress which subsequently passed upon it. The absence of such a survey might have induced a rejection of the claim by the commissioners or by congress; but they confirmed it, and the courts cannot inquire into the propriety or expediency of such a confirmation.
An opinion upon the second question is not required by the position occupied by the defendant in this case. The surveyor general was expressly authorized by law to survey confirmations of Spanish claims. A survey has been made and it is in evidence before the court. The defendant has no title, for his paper certificate of pre-emption in 1843 was a mere nullity. Why then look into the propriety of the survey ? The federal government has ample power, and its legislature has provided ample means for setting aside the surveys of its officers, when they are thought to be injurious to the interests of the government. It is not believed to be any part of our duty to interfere, where the rights of our citizens are not affected. If the United States think proper to give away their lands, it is not for us to complain. It is a matter exclusively for the consideration of those interested, and it would be idle for this court to scrutinize the regularity of proceedings, in which no one but the United States and her officers are concerned. This principle has been re *156 peatedly avowed and acted on. Boyce vs. Papin 11 Mo. R. 16 Machlot vs. Dubreuil 9 Ib. 477; Hunter vs. Humphill 6 Ib. 106.
If the United States undertake to give away land w-hieh they have previously sold to another, the question assumes a different shape. There is no doubt that a purchaser from the government- previous to 1§36, has a right to contest- this- survey of the confirmation to Dubreuil, should S-uch a controversy arise, the questions partially investigated in this ease in the circuit court must be determined. It must then be decided whether the surveyor can locate a claim of this character, according to his fancy, or must be guided by localities fixed before the confirmation.
It may be observed, that in order to^give a determined locality to the concession to Debreuil it does not appear to be essential-that a survey on the ground should have been completed before the confirmation. The concession was a peculiar-one; it was of 100 arpens squaee, upon Buffalo Creek. Now in 1806, or at any period after the lands- in the region embracing Buffalo Creek had been sectionized, it would only be necessary to determine a point and a course, in order to place a hundred arpens square upon Buffalo Creek. When this’yvas done, a plat of the whole survey could be made on the maps in the surveyor’s office, as well as though a survey of all the lines had been made upon the land. The officers whose duty it was to dispose of the public lands in this vicinity could be advised of the locality of the grant, as the law required them to be, by plats from the surveyor’s, office, communicated first to the register of lands. The records of these officers would show whether this was done. The instructions of' the surveyor general to his deputy, Campbell, and the field notes of the survey itself, would show the data upon which the survey was based. It would readily appear, whether -the surveyor had made a survey according to his own fancy, o-r had followed the courses apd distances settled by previous surveys.
The record of' the proceedings in the suit for partition, between persons. representing themselves as the heirs of Antoi'ne Dubreuil, was evidence of the partition; but the heirships of the individuals named in those proceedings, must be proved by evidence aliunde. The defendant was not a party to that suit, and the preliminary facts necessary to authorize a judgment in that case, must be proved by other evidence than., that record.
The other judges concurring, the judgment- is reversed and the cause remanded».